## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| GLYNIS DEWITT<br>13102 W 123rd Ter<br>Overland Park, KS 66213-5056<br>*Individually and On Behalf*<br>*Of All Others Similarly Situated,*<br><br>Plaintiff,<br><br>v.<br><br>NAVIENT CORPORATION,<br>2711 Centerville Rd, Suite 400<br>Wilmington, DE 19808<br><br>NAVIENT SOLUTIONS, INC.,<br>2711 Centerville Rd, Suite 400<br>Wilmington, DE 1980<br><br>UNITED STUDENT AID FUNDS, INC.,<br>2401 International Ln<br>Madison, WI 53704<br><br>EOS CCA DEBT COLLECTION CO.<br>700 Longwater Drive<br>Norwell, MA 02061<br><br>DOE DEFENDANTS 1-10,<br>Unknown,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.:<br><br>Judge:<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT FOR PERMANENT INJUNCTION</u>
## <u>AND OTHER RELIEF</u>

Plaintiff Glynis DeWitt, by and through undersigned counsel, on her own behalf and on

behalf of all others similarly situated, upon personal knowledge as to herself and her own acts, and

upon information and belief as to all other matters, brings this action against Defendants Navient

Corporation, Navient Solutions, Inc. (Navient), United Student Aid Funds, Inc. (USA Funds), EOS

CCA Debt Collection Company (EOS CCA), and Doe Defendants 1-10 (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      This class action seeks redress for a series of wrongful collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (the "FDCPA") and are otherwise unlawful, as set forth below.

2.      This class action seeks redress for a series of wrongful and unconscionable collection and intimidation practices that violate the Kansas Consumer Protection Act (KCPA) under K.S.A. § 50-623 through 50-636.

3.      This class action seeks redress for a series of wrongful and unconscionable collection and intimidation practices that violate the Kansas Fair Debt Collection Practices Act (KFDCPA) under Chapter 16a of the Uniform Consumer Credit Code (UCCC) and K.S.A. 16a-1-101 through 16a-9-102.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337.

5.      Subject matter jurisdiction is also invoked pursuant to 28 U.S.C. § 1332(d)(2) based on Plaintiff and Defendants' diversity of citizenship, and the amount in controversy exceeding $5,000,000.00

6.      This Court has personal jurisdiction over the Defendants because they do business in the State of Kansas.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the District of Kansas and a substantial portion of the events or omissions giving rise

to the claims occurred within the District of Kansas. This Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

8.     Plaintiff Glynis DeWitt is an individual citizen of the State of Kansas, and has at all times relevant to this complaint been a resident of Johnson County, Kansas.

9.     Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

10.    Plaintiff is a "consumer" as defined by K.S.A § 50-624(5) of the KCPA.

11.    Formerly known as Sallie Mae, Inc., defendant Navient Solutions, Inc., a wholly-owned subsidiary of Navient Corporation, is a corporation organized under the laws of the State of Delaware, and having its principal place of business at 300 Continental Drive, Newark, Delaware 19713. Navient Solutions, Inc. principally engages in servicing of federal and private student loans for more than 12 million borrowers.

12.    Defendant Navient Corporation is a loan management, servicing, and asset recovery company organized under the laws of the State of Delaware, having its principal place of business at 123 Justison Street, Wilmington, Delaware 19801. Navient Corporation is the direct or indirect owner of all of the stock of Navient Solutions, Inc.

13.    There has been significant overlap between the corporate governance and management of Navient Corporation and Navient Solutions, Inc. Specifically, many of the directors and officers of Navient Solutions, Inc. have also been directors or officers of Navient Corporation. For example, as of 2014, John Remondi served as President and Chief Executive Officer for both Navient Corporation and Navient Solutions, Inc.; John Kane served as Chief Operating Officer for both Navient Corporation and Navient Solutions, Inc.; Somsak Chivavibul

served as Chief Financial Officer for both Navient Corporation and Navient Solutions, Inc.; Timothy Hynes served as Chief Risk Officer for both Navient Corporation and Navient Solutions, Inc.; and Stephen O'Connell served as Senior Vice President and Treasurer for both Navient Corporation and Navient Solutions, Inc.

14.     Following a corporate reorganization in 2014, Navient Corporation was the successor to SLM Corporation and Navient, LLC. As part of this reorganization, Navient Corporation assumed certain liabilities related to the servicing and collection activities of SLM Corporation, Navient, LLC, and their subsidiaries. Among the liabilities assumed by Navient Corporation are all of the pre-reorganization servicing conduct described in this Complaint.

15.     For all intents and purposes, Navient is the new name for Sallie Mae.

16.     A principal-agent relationship exists between Navient Corporation, Navient Solutions, Inc., and Navient Credit Finance Corporation. Navient Corporation is the principal of all other related entities.

17.     Navient Corporation is liable for the wrongful acts of its subsidiary-agents, including Navient Solutions, Inc. and Navient Credit Finance Corporation (collectively "Navient").

18.     Navient has been at all times relevant to this complaint been licensed to operate in Kansas.

19.     Navient Solutions, Inc. entered into a consumer credit transaction as a creditor with Plaintiff and therefore is subject to the Uniform Consumer Credit Code under K.S.A. §§ 16a-1-101, 16a-1-301.

20.     Navient is a student loan services providing student loan services in Kansas and several other states under a contract with the U.S. Department of Education.

21.     Defendant Navient is a supplier who engages in consumer transactions in Kansas and therefore is subject to the Kansas Consumer Protection Act (KCPA) under K.S.A. § 50-624.

22.     Defendant USA Funds is a loan guarantor operating in Kansas, is engaged in consumer credit transactions, and is therefore subject to the UCCC and KCPA under K.S.A. §§ 16a-1-101, 16a-1-301, 50-624.

23.     Defendant EOS CCA is a "debt collector" as defined by § 1692a(6) of the FDCPA.

24.     Defendant EOS CCA is a debt collection agency operating in Kansas and is therefore engaged in consumer credit transactions and subject to the UCCC and KCPA under K.S.A. §§ 16a-1-101, 16a-1-301, 50-624.

25.     Additionally, the acts of the Defendants were conducted in concert pursuant to an express or implied agreement amongst themselves to act in this collective manner. All Defendants are therefore jointly and severally liable for the acts complained of herein.

26.     Doe Defendants 1-10 are defendants that may be discovered as discovery in this matter is performed.

27.     Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## STATEMENT OF FACTS

28.     Beginning on and about December 21, 2001, Plaintiff registered for the Nursing Program with Johnson County Community College School of Nursing.

29.     To pay for this schooling, Plaintiff took out student loans.

30.     In 2001, Plaintiff borrowed approximately $16,556.93 in student loans.

31.     These loans were disbursed by the Department of Education, and were assigned to Sallie Mae for servicing.

32.     Plaintiff originally entered into a student loan agreement with Navient Federal Loan Trust as the Lender, with a disbursement date of December 21, 2001. The Loan Identification Numbers for this agreement were 9181395117 1-01 and 9181395117 1-02.

33.     Plaintiff made periodic, timely payments to satisfy this loan until July 2013.

34.     As of June 20, 2013, Plaintiff owed a loan balance of $3,592.24 on Loan Number 9181395117 1-01 and $2,665.35 on Loan Number 9181395117 1-02.

35.     As of June 20, 2013, Plaintiff's Loan Number 9181395117 1-01 and Loan Number 9181395117 1-02 were each set up with an "Auto Debit" payment method, with a payment amount that became due on the 19th of every month.

36.     Upon information and belief, the "Auto Debit" payments would have continued so long as there was a balance left on the loans.

37.     In July 2013, Plaintiff consolidated her student loan debt via a loan agreement with Commerce Bank.

38.     On July 19, 2013, Commerce Bank disbursed a $6,304.32 "PAYOFF" payment to Sallie Mae Account Numbers 9181395117 1-01 and 9181395117 1-02 to fully pay off each of these loans; on that same day, Commerce Bank also issued another six other payments to Sallie Mae to fully pay off all student loan debt incurred by Plaintiff.

39.     A copy of the cashier's check, dated July 24, 2013 for $6,304.32 issued specifically to pay the full balance of both Loans Nos. 9181395117 1-01 and 9181395117 1-02 is attached hereto as **Exhibit A.**

40.    After the July 24, 2013 Check was cashed in satisfaction of the loans, there were no Auto Debit payments taken from the account with which Plaintiff had set up the Auto Debit payment method.

41.    Despite the fact that loans 9181395117 1-01 and 9181395117 1-02 were paid in full on July 24, 2013, and Plaintiff made no further payments thereon for over a year between July 24, 2013 and September 19, 2014, correspondence from Navient dated November 17, 2016, states that the first date of delinquency related to Plaintiff's account was "09/19/2014."

42.    Despite the fact that loans 9181395117 1-01 and 9181395117 1-02 were paid in full in July 2013, these loans were placed into default status at some point and sold to USA Funds on October 30, 2015.

43.    When these loans were placed into wrongful default status in 2015, the loan totals for each loan was for amounts less than that that was owed prior to and paid off in the July 2013 payment.

44.    Plaintiff was now a debtor with federal student loans that were placed into default status.

45.    At no time between September 9, 2014 and October 30, 2015, was Plaintiff notified that she was delinquent, that her loans were allegedly in default or that her allegedly defaulted loans were going to be purchased from the lender.

46.    Upon the alleged default, and despite the fact that these loans were paid in July 2013, on October 30, 2015, Defendant USA Funds purchased the student loans 9181395117-01 and 9181395117-02.

47.    Plaintiff's federal student loans were "debts" as that term is defined by the FDCPA.

48.     On January 31, 2016, Defendant USA Funds reported to the National Consumer Reporting Agencies that the loans in question were in default, despite the fact that the loans were previously paid in full.

49.     On February 26, 2016, Plaintiff provided USA Funds and Navient notice, in writing, that the allege debt was already paid in full and was therefore disputed.

50.     On August 25, 2016, Plaintiff again, after receiving no verification of the debt of copy of a judgement, provided USA Funds and Navient notice, in writing, that the allege debt was already paid in full and was therefore disputed.

51.     On September 13, 2016, Plaintiff again, after receiving no verification of the debt of copy of a judgement from any other Defendant, provided USA Funds and Navient notice, in writing, that the allege debt was already paid in full and was therefore disputed.

52.     On October 25, 2016, EOS CCA sent Plaintiff a "First Demand Notice" indicating that Plaintiffs account had been placed with EOS CCA for collection.

53.     On November 2, 2016, Plaintiff again, after receiving no verification of the debt of copy of a judgement from any other Defendant, provided EOS CCA notice, in writing, that the allege debt was already paid in full and was therefore disputed.

54.     Defendant USA Funds assigned the allegedly defaulted loans to collection contractors including Defendant EOS CCA in order to collect on the student loans, despite the fact that the loans were previously paid in full.

55.     At some point in 2016, the alleged debt was reported to the IRS with the intention of garnishing Plaintiff's tax refund checks.

56.     Under 34 CFR § 34.5, before initiating wage garnishment of student loans, debt collectors are required to send a notice of proposed garnishment, said notice to include an

explanation of the debtor's rights, including, but not limited to, those rights found at 34 CFR § 34.6.

57.     Under 34 CFR § 34.6, a debtor has the right to inspect and copy records related to the debt, and to enter into a written repayment agreement. However, a debtor also has a right to object to the wage deduction and demand a hearing on said objection.

58.     At no point was Plaintiff provided with the required notice of the proposed garnishment and was not given an opportunity to object to the wage deduction or demand a hearing on said objection, nor was she granted the right to inspect and copy records related to the debt or enter into a written repayment agreement.

59.     In order to prevent garnishment and further negative impacts on her credit score, Plaintiff was forced to begin making installment payments paying additional moneys under protest to satisfy loans which were already paid in full.

60.     On August 12, 2016, Navient responded to Plaintiff's inquires stating that they had received Plaintiff's correspondence and documentation showing that a cashier's check in the amount of $6,304.32 was cashed in satisfaction in full to pay off Plaintiff's loans at issue, which Navient points out, were now guaranteed by USA Funds.  Navient goes on to state that "[u]pon research, [their records] show that the payment was cashed by Navient Department of Education." [Which is who the lender and appropriate payee was at the time the check was issued on July 24, 2013].   Navient then goes on to state that: "USA Funds is a private company and is not affiliated with Navient Department of Education."  This correspondence goes on to restate that "when the loans defaulted" the "guarantor listed above" [USA Funds] purchased the loans on 10/30/2015."

61.     At the time the July 24, 2013 check was issued and cashed, USA Funds was the guarantor of the loan but, USA Funds did not "purchase" the allegedly defaulted loans until October 30, 2015, as alleged by Navient in this August 12, 2016 correspondence.

62.     The July 24, 2013 check was issued and cashed two years before Navient alleges that USA Funds purchased the wrongfully defaulted loans on October 30, 2015.

63.     On November 17, 2016, in response to further requests for clarity from Plaintiff, Navient wrote again stating that the "check [for $6,304.92, presumably, but not definitively stated by Navient] was cashed by Navient Department of Education.  The Loan that was paid in full was [Plaintiff's unrelated] 08/26/09 Parent PLUS loan for [Plaintiff's daughter] Chelsea R. Harvey." This correspondence goes on to restate that her aforementioned loans had defaulted and been purchased from the lenders with no further explanation whatsoever.

64.     On December 6, 2016, Plaintiff again, after receiving no verification of the debt of copy of a judgement from any other Defendant, provided USA Funds and Navient notice, in writing, that the allege debt was already paid in full and was therefore disputed.

65.     The aforementioned, unrelated 08/26/09 Parent PLUS loan for Chelsea R. Harvey had a balance of $3,089.80 on June 20, 2013, four days prior to the issuance of the $6,304.92 check directly for the payment of the other two loans linked to Plaintiff's account, as was specified on the check.  There was a separate cashier's check issued, on the exact same date, for the remaining balance of the Parent PLUS loan, which was indicated specifically on that check.  That check was likewise cashed immediately thereafter. A copy of said "Parent PLUS Loan" cashier's check is attached hereto as **Exhibit B**.  This correspondence does not reference the other separate (Parent PLUS payoff) check that was issued and cashed in satisfaction of the Parent Plus Loan (which Navient alleges was satisfied by the $6,304.93 check).

66.     Like Plaintiff's Loan Number 9181395117 1-01 and Loan Number9181395117 1-02, Plaintiff had a separate "Auto Debit" payment method set up for the Parent PLUS loan.

67.     After the Parent PLUS Loan was satisfied by the check evidenced in Exhibit B that was issued and cashed on the same date as the $6,304.92 check, Plaintiff's Parent PLUS Loan Auto Debit repayment method stopped.

68.     No Auto Debits linked to any loans of Plaintiffs auto debited after the July 24, 2013 checks were issued and cashed, indicating that any and all outstanding balances linked to Plaintiff's account were paid in full by the checks sent.

69.     On April 13, 2017, counsel for Plaintiff sent a letter to Navient requesting an explanation of the alleged default of Plaintiff's loan obligations, after counsel provided Navient with supporting documentation proving that the loan balance had been previously satisfied by Plaintiff.

70.     On April 28, 2017, Navient responded to this correspondence and failed to provide any explanation or support for their contention that Plaintiff's loan obligation was in default, and further failed to provide any records supporting its contention that Plaintiffs loan obligation was in default.

71.     On May 10, 2017, counsel for Plaintiff sent a second letter to Navient requesting an explanation of the alleged default due to the April 13, 2017 letter being void of any substantive explanation, instead only restating Navient's contention that the loans were in default.

72.     On May 18, 2017, Navient responded to this correspondence, first stating that Navient "never received" the cashier's check from Commerce Bank in the amount of $6,304.32 and that the endorsement on the provided copy of the check indicated that it was cashed by the

11

"U.S. Treasury". Navient again failed to explain the alleged remaining defaulted debt or to provide any records supporting its contention that Plaintiffs loan obligation was in default.

73.    Despite Plaintiff's repeated efforts to contact Defendants via mail, phone, fax, and email, Defendants have not provided an explanation as to why the cashier's check was cashed, but not used to pay off the loans it was meant to satisfy.

74.    Plaintiff has been forced to make installment payments under protest, paying additional moneys not rightfully owed to Defendants, to satisfy loans which were already paid in full.

75.    As of the date of this Complaint, Plaintiff is still making monthly installment payments in order to prevent garnishment and further negative impacts on her credit rating.

76.    Defendants continue to demand these payments and wrongfully accept these payments, knowing Plaintiff does not have a lawful obligation to pay.

## CLASS ALLEGATIONS

77.    Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All individuals who reside in the United States, who were subjected to the improper, wrongful, unfair, or deceptive debt collection practices by Defendants, individually or collectively, as alleged below, and who suffered damages therefrom.

78.    Alternatively, Plaintiff brings this action on behalf of herself and on behalf of a Kansas subclass pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All individuals who reside(d) in the Kansas, who were subjected to the improper, wrongful, unfair, or deceptive debt collection practices by

Defendants, individually or collectively, as alleged below, and who suffered damages therefrom.

79.     Specifically excluded from the above described Classes are: (a) any officers, directors, or employees of Defendants, or any of their subsidiaries; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; and (d) any juror selected to serve this case.

80.     Further, as discovery unfolds, additional classes or modified classes might be possible or necessary. However, as Defendants' acts are potentially widespread and are violative of a federal statute, use of a nationwide class is best-suited for this action and places Defendants on notice of the broadest possible class that Plaintiff could move for, as contemplated by the Federal Rules' notice-pleading standard.

81.     The members of the Classes are ascertainable from objective criteria.

82.     If necessary to preserve the case as a class action, the Court itself can redefine the Classes, create additional subclasses, or both.

83.     The requirements of Rule 23(a) are satisfied as the members of the Classes are so numerous and geographically dispersed that joinder is impracticable. On information and belief, there are more than 50 members for each Class. The commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law or fact common to Plaintiff and the other members of the proposed Classes. Among those common questions of law or fact are:

a. whether Defendants have a common policy and practice of attempting to collect on settled debt;

b. whether Defendants have a common policy and practice using unfair practices in attempting to collect debts;

c.      whether Defendants have a common policy and practice using unfair practices in attempting to garnish wages or threats thereof;

d.      whether Defendants have a common policy and practice using unfair practices in falsely reporting satisfied debts as defaulted to federal agencies;

e.      whether Defendants violated the FDCPA;

f.      whether Defendants violated the KCPA;

g.      whether Defendants made accepted payments of debt;

h.      whether members of the Classes paid their loans in full pursuant to and in accordance with their original loan agreements;

i.      whether the Class members debts were actually settled by Defendants;

j.      Whether Defendants knowingly collected on fully satisfied debts; and

k.      whether or not members of the Classes are damaged by Defendants unlawful acts.

84.     Plaintiff's claims are typical of the claims of the proposed Classes that she seeks to represent, as described above, because they arise from the same course of conduct by Defendants and are based on the same legal theories. Further, Plaintiff seeks the same form of relief for herself and the proposed Classes. Therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

85.     Because her claims are typical of the proposed Classes that Plaintiff seeks to represent, Plaintiff has every incentive to pursue those claims vigorously. Plaintiff has no conflicts with, or interests antagonistic to the proposed Classes. Plaintiff, a victim of unscrupulous student loan servicing and general business practices, is committed to the vigorous prosecution of this action, which is reflected in her retention of competent counsel experienced in complex and challenging litigation. Plaintiff's counsel satisfies the requirements of Rule 23(g) to serve as

counsel for the proposed Class. Plaintiff's counsel (a) has identified and thoroughly investigated the claims set forth herein; (b) has previously been lead counsel in class action litigation; (c) has been involved in complex class litigation; (d) has extensive knowledge of the applicable law; and (d) has the resources to commit to the vigorous prosecution of this action on behalf of the proposed Class. Accordingly, Plaintiff satisfies the adequacy of representation requirements of Rule 23(a)(4). In addition, this action meets the requirements of Rule 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Plaintiff and others similarly situated, making final injunctive or corresponding declaratory relief with respect to the proposed Classes appropriate.

86.     This action also meets the requirements of Rule 23(b)(3). Common questions of law or fact, including those set forth above, exist as to the claims of all members of the proposed Class and predominate over questions affecting only individual Class members, and a class action is superior – if not the only method – for the fair and efficient adjudication of this controversy. Class treatment will permit large numbers of similarly situated student loan borrowers to prosecute their respective claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

87.     This action is manageable as a class action. Notice may be provided to members of the proposed Class by first-class mail and through the alternative means, including electronic mail (email), internet postings including banner ads, distribution through social media, including sponsored postings on Facebook and Twitter, and by publication. Thus, the superiority and manageability requirements of Rule 23(b)(3) are satisfied.

## COUNT I – VIOLATION OF THE FDCPA – INDIVIDUALLY AND ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS "NAVIENT'"

88.     Plaintiff alleged and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89.     Section 15 U.S.C. 1692e(2)(A) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: the false representation of – the character, amount, or legal status of any debt."

90.     Section 15 U.S.C. 1692e(5) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: the threat to take any action that cannot legally be taken…"

91.     Section 15 U.S.C. 1692e(10) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: the use of any false representation or deceptive means to collect or attempt to collect any debt…"

92.     Section 15 U.S.C. 1692g(a) states, "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall. . . send the consumer a written notice containing—

      (1) the amount of the debt;

      (2) the name of the creditor to whom the debt is owed;

      (3) a statement that unless the consumer, within thirty days after

      receipt of the notice, disputes the validity of the debt, or any

portion thereof, the debt will be assumed to be valid by the debt collector;

(4)  a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)  a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

93.    Section 15 U.S.C. 1692g(b) states, "If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment,. . . . is mailed to the consumer by the debt collector. . ."

94.    Navient made false misrepresentations to Plaintiff about the character, amount, and legal status of the alleged debt in order to sell the debt to other debt collectors on its behalf.

95.    Plaintiff provided written notice of dispute of the debt to Navient.

96.    Navient informed Plaintiff that she owed an alleged debt that had actually already been fully settled, paid, and satisfied in full.

17

97.     Navient provided no legitimate, undisputed verification of the debt or copy of a judgment verifying the debt to Plaintiff, the consumer.

98.     Plaintiff provided Navient with detailed proof that the alleged debt had been fully settled, paid, and satisfied in full.

99.     Navient threatened, and in fact took, action through instituting an IRS garnishment action that it could not legally take.

100.    At the time of filing this lawsuit, Navient continues to illegally collect monthly installment payments from Plaintiff.

101.    Navient used false representations and deceptive means in its attempt to collect the alleged debt.

102.    Navient informed Plaintiff that she owed an alleged debt that had actually already been fully settled, paid, and satisfied in full.  Navient has violated 15 U.S.C. §§ 1692e(2)(A), 1692e(5), and 1692e(10).

103.    Navient made false, deceptive, and misleading representations to Plaintiffs, and the national consumer credit reporting agencies regarding the amount of money owed by Plaintiff to Defendants stemming from her student loans in violation of the Fair Debt Collection Practices Act. 15 U.S.C. § 1692e, 1692e(10).

104.    Plaintiff has sustained damages and will continue to suffer damages in the future as a result of Defendant's actions in causing her to pay additional money for a loan that was previously satisfied, negatively impacting her credit score, defaming her character, and inflicting emotional distress, stress, and anxiety.

105.    Navient is therefore liable for statutory fees, penalties, and Plaintiff's reasonable attorneys' fees and costs.

106.    Therefore, Defendant Navient is liable for damages, statutory fees and penalties, and Plaintiffs' reasonable attorneys' fees and costs.

## COUNT II – VIOLATION OF THE FDCPA – INDIVIDUALLY AND ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANT USA FUNDS

107.    Plaintiff alleges and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108.    Section 15 U.S.C. 1692e(2)(A) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: the false representation of – the character, amount, or legal status of any debt."

109.    Section 15 U.S.C. 1692e(5) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: the threat to take any action that cannot legally be taken…"

110.    Section 15 U.S.C. 1692e(10) states, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: the use of any false representation or deceptive means to collect or attempt to collect any debt…"

111.    Section 15 U.S.C. 1692g(a) states, "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall. . . send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3)  a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)  a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)  a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

112.    Section 15 U.S.C. 1692g(b) states, "If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, . . .  the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment,. . . . is mailed to the consumer by the debt collector. . ."

113.    USA Funds made false misrepresentations to Plaintiff about the character, amount, and legal status of the alleged debt.

114.   USA Funds informed Plaintiff that she owed an alleged debt that had actually already been fully settled, paid, and satisfied in full.

115.   Plaintiff provided written notice of dispute of the debt to USA Funds.

116.   Plaintiff provided USA Funds with detailed proof that the alleged debt had been fully settled, paid, and satisfied in full.

117.   USA Funds provided no legitimate, undisputed verification of the debt or copy of a judgment verifying the debt to Plaintiff, the consumer.

118.   USA Funds threatened, and in fact took, action through instituting an IRS garnishment action that it could not legally take.

119.   At the time of filing this lawsuit, USA Funds continues to illegally collect monthly installment payments from Plaintiff.

120.   USA Funds used false representations and deceptive means in its attempt to collect the alleged debt.

121.   USA Funds informed Plaintiff that she owed an alleged debt that had actually already been fully settled, paid, and satisfied in full.  USA Funds has violated 15 U.S.C. §§ 1692e(2)(A), 1692e(5), and 1692e(10).

122.   USA Funds made false, deceptive, and misleading representations to Plaintiffs, and the national consumer credit reporting agencies regarding the amount of money owed by Plaintiff to Defendants stemming from her student loans in violation of the Fair Debt Collection Practices Act. 15 U.S.C. § 1692e, 1692e(10).

123.   Plaintiff has sustained damages and will continue to suffer damages in the future as a result of Defendant's actions in causing her to pay additional money for a loan that was

previously satisfied, negatively impacting her credit score, defaming her character, and inflicting emotional distress, stress, and anxiety.

124.   USA Funds is therefore liable for statutory fees, penalties, and Plaintiff's reasonable attorneys' fees and costs.

125.   Therefore, Defendant USA Funds is liable for damages, statutory fees and penalties, and Plaintiffs' reasonable attorneys' fees and costs.

## COUNT III – VIOLATION OF THE FDCPA – INDIVIDUALLY AND ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANT EOS CCA

126.   Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

127.   Section 15 U.S.C. 1692g(a) states, "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall. . . send the consumer a written notice containing—

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy

of such verification or judgment will be mailed to the consumer by
the debt collector; and

(5)  a statement that, upon the consumer's written request within
the thirty-day period, the debt collector will provide the consumer
with the name and address of the original creditor, if different from
the current creditor."

128.   Section 15 U.S.C. 1692g(b) states, "If the consumer notifies the debt collector in
writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, . . .  the
debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt
collector obtains verification of the debt or a copy of a judgment, or the name and address of the
original creditor, and a copy of such verification or judgment,. . . . is mailed to the consumer by
the debt collector. . ."

129.   Plaintiff received a letter on December 12, 2016 from EOS CCA offering a Loan
Rehabilitation Program for the loans on which Plaintiff allegedly defaulted.

130.   Plaintiff provided written notice of dispute of the debt to EOS CCA.

131.   EOS CCA provided no legitimate, undisputed verification of the debt or copy of a
judgment verifying the debt to Plaintiff, the consumer.

132.   Plaintiff accepted the terms offered of the Program, under protest, in order to
prevent garnishment and further negative impacts on her credit score.

133.   Plaintiff's checks are accepted by EOS CCA and, upon information and belief, are
cashed by Sallie Mae (i.e. Navient).

134.   Thereafter, EOS CCA accepted Plaintiffs monthly installments under the Loan
Rehabilitation Program, even after Plaintiff had notified EOS CCA that she was was making the

payments under protest and had provided sufficient documentation to EOS CCA's successor in interest that the allegedly defaulted loan amount had been paid in full.

135.   EOS CCA falsely represented the legal status of Plaintiff's debt.

136.   EOS CCA represented to Plaintiff that it could settle her debt on certain payment terms.

137.   As Plaintiff's debt continues to be collected on, EOS CCA falsely represented the character and legal status of Plaintiff's debt, in violation of the FDCPA, and EOS CCA used unfair and unconscionable means in its attempt to collect, and actual collection of monthly installment payments of $81.00, in violation of the FDCPA.  EOS CCA is therefore liable for statutory fees, penalties, and Plaintiff's reasonable attorneys' fees and costs.

138.   Therefore, Defendant EOS CCA is liable for damages, statutory fees and penalties, and Plaintiffs' reasonable attorneys' fees and costs.

## COUNT IV -- VIOLATIONS OF THE UNIFORM COMMERCIAL CREDIT CODE INDVIDUALLY AND ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS

139.   Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint

140.   K.S.A. §16a-1-201, also known as the Uniform Commercial Credit Code, applies to consumer credit transactions made within this state. "A consumer credit transaction is made in this state if: a signed writing evidencing the obligation or offer of the consumer is received by the creditor in this state; or the creditor induces the consumer who is a resident of this state to enter into the transaction by solicitation in this state by any means." K.S.A. § 16a-1-201(1).

141.   Plaintiff, a Kansas resident, received and signed the loan agreement in the state of Kansas, thus, this transaction falls under the protection of the UCCC.

142.   Defendants violated the purpose of the UCCC which is to protect consumer borrowers against unfair practices by suppliers of consumer credit. K.S.A. § 16a-1-102(2)(d).

143.   By requiring Plaintiff to make additional payments on a loan that was fully satisfied, negatively impacting Plaintiff's credit score, and refusing to adequately remedy their error, Plaintiffs are in violation of the UCCC.

144.   Plaintiff has sustained damages and will continue to suffer damages in the future as a result of Defendant's actions in causing her to pay additional money for a loan that was previously satisfied, negatively impacting her credit score, defaming her character, and inflicting emotional distress, stress, and anxiety.

145.   Therefore, Defendants are liable for damages, statutory fees and penalties, and Plaintiffs' reasonable attorneys' fees and costs.

## COUNT V – VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT INDIVIDUALLY AND ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS

146.   Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint

147.   The Kansas Consumer Protection Act (KCPA) was constructed to liberally promote the protection of consumers from suppliers who commit deceptive and unconscionable practices. K.S.A. § 50-623(b).

148.   Plaintiff is a consumer under the KCPA as an individual seeking services for personal, family, or household purposes. K.S.A. § 50-624(b).

149.   Defendants are suppliers under the KCPA as businesses that engage in consumer transactions. K.S.A. § 50-624(l), (c).

150.    The KCPA states that, "no supplier shall engage in any deceptive act or practice in connection with a consumer transaction." K.S.A. § 50-626(a).

151.    Among the list of deceptive acts or practices prohibited by the KCPA are, willfully failing to state a material fact, or willfully concealing, suppressing or omitting a material fact. *See* K.S.A. § 50-626(3).

152.    Defendants violated the KCPA, *inter alia*, by continuing collection activities against Plaintiff, requiring Plaintiff to make additional payments, negatively impacting her credit score, willfully concealing and/or failing to acknowledge the proof that she repeatedly provided regarding her previous satisfaction of the student loans in question, and placing them in default years after they were satisfied.

153.    The KCPA further states that, "no supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." K.S.A. § 50-627(a).

154.    By placing a fully satisfied loan in default, reporting the default to national consumer reporting agencies, issuing a letter to the IRS requesting garnishment and/or tax return intercept, and requiring additional installment payments, *inter alia*, Defendants committed unconscionable acts and practices against Plaintiff.

155.    Plaintiff has sustained damages and will continue to suffer damages in the future as a result of Defendant's actions in causing her to pay additional money for a loan that was previously satisfied, negatively impacting her credit score, defaming her character, and inflicting emotional distress, stress, and anxiety.

156.    Therefore, Defendants are liable for damages, statutory fees and penalties, and Plaintiffs' reasonable attorneys' fees and costs.

## COUNT VI -- NEGLIGENCE – INDIVIDUALLY AND ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS

157.    Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

158.    Defendants owed a legal duty to Plaintiff as a party to a commercial transaction, and breached that duty by charging Plaintiff multiple times for loan amounts that she previously paid in full, and by failing to verify the disputed loans, or provide verification of the existence of the disputed loan balances, even after Defendants were made aware and acknowledged that checks, for a total amount sufficient to satisfy the full outstanding balance of all of Plaintiff's loans, had been cashed and endorsed by Defendant Navient.

159.    By charging additional amounts on the satisfied loans, and reporting the loans as being in default to the National Consumer Reporting Agencies and the IRS, Defendants caused Plaintiff damages in the form of negatively impacted credit scores, and monetary damages arising out of the unnecessary additional payments she made to Defendants.

160.    Plaintiff has sustained damages and will continue to suffer damages in the future as a result of Defendants' actions in causing her to pay additional money for a loan that was previously satisfied, negatively impacting her credit score, defaming her character, and inflicting emotional distress, stress, and anxiety.

161.    Therefore, Defendants are liable for damages, statutory fees and penalties, and Plaintiffs' reasonable attorneys' fees and costs.

## COUNT VII – BREACH OF CONTRACT -- INDIVIDUALLY AND ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS

162.    Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

163.    A written contract with sufficient consideration existed between Plaintiff and Defendants as evidenced by the promissory note executed in exchange for loan numbers 9181395117-01 and 9181395117-02.

164.    Plaintiff was not only willing to perform in compliance with the contract, but did perform her obligations under the contract by paying her loans in full as evidenced by the checks issued by Commerce Bank on behalf of Plaintiff on July 24, 2013.

165.    Defendants breached the contract by repeatedly charging Plaintiff additional funds beyond those required in the contract and reporting the loans as being in default despite the fact they were fully satisfied.

166.    Because of Defendants' breach, Plaintiff was damaged in the form of additional funds paid, and a negatively impacted credit score.

167.    Plaintiff has sustained damages and will continue to suffer damages in the future as a result of Defendant's actions in causing her to pay additional money for a loan that was previously satisfied, negatively impacting her credit score, defaming her character, and inflicting emotional distress, stress, and anxiety.

## COUNT VIII – UNJUST ENRICHMENT -- INDIVIDUALLY AND ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS

168.    Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

169.    Defendants received a benefit by receiving additional moneys from Plaintiff, including additional interest, for loans that were previously paid in full by Plaintiff.

170.    Defendants knew or should have known that the loans in question were not in default through adequate record keeping, and furthermore because of Plaintiff's repeated oral and written communications with Defendants over a period spanning nearly eighteen months.

171.    Despite Plaintiff's repeated attempts to notify Defendants of their error, Defendants continued to accept additional payments from Plaintiff, pursue collection efforts, threaten her with garnishment, and charged additional interest on the loans which had already been satisfied by Plaintiff.

172.    Plaintiff has sustained damages and will continue to suffer damages in the future as a result of Defendant's actions in causing her to pay additional money for a loan that was previously satisfied, negatively impacting her credit score, defaming her character, and inflicting emotional distress, stress, and anxiety.

## COUNT IX – DEFAMATION (SLANDER)
## PLAINTIFF V. DEFENDANTS

173.    Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

174.    By reporting that Plaintiff's loans were in default to the National Consumer Reporting Agencies and to the Internal Revenue Service, Defendants communicated false and defamatory words to third parties.

175.    These false words harmed Plaintiff by negatively impacting her credit score making it more difficult to obtain future loans or extensions of credit.

176.    Additionally, the false words that were reported to the IRS caused harm to Plaintiff because they led to threatened and potential tax garnishments against her, and forced her to make additional installment payments while interest accrued on loans that she previously paid in full.

177.    Plaintiff has sustained damages and will continue to suffer damages in the future as a result of Defendant's actions in causing her to pay additional money for a loan that was previously satisfied, negatively impacting her credit score, defaming her character, and inflicting emotional distress, stress, and anxiety.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

## ENTITLEMENT TO RELIEF

By virtue of the violations of the laws as set forth above and described in the preceding paragraphs, Plaintiff is entitled to sue the Defendants who committed these violations described therein and receive injunctive and other relief pursuant to the laws as set forth above and to obtain other such equitable or remedial relief as the Court may deem appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests that the Court enter judgment against Defendants on each Count of the Complaint and the following relief:

1.      An Order certifying this matter as a class action pursuant to FED. R. CIV. P. 23;

2.      Entry of judgment finding Defendants violated the law as set forth above;

3.      Monetary and statutory damages to which Plaintiff and others similarly situated are entitled and will be entitled to at the time of trial;

4.      Pre- and post-judgment interest;

5.      The costs of this action;

6.      Reasonable attorneys' fees;

7.      Entry of an Order Directing the Defendants to notify the National Consumer Reporting Agencies and the IRS of their errors affecting Plaintiff and others similarly situated;

8.      Entry of an Order directing the Defendants to cease and desist their collection efforts against Plaintiff and others similarly situated;

9.   Permanent injunctive relief against the Defendants prohibiting further debt collection practices in violation of the law as set forth above; and

10.   Such other and further relief as the Court deems just and proper.


Respectfully submitted,

MORROW•WILLNAUER•CHURCH, L.L.C.

By _____

   GARY J. WILLNAUER, #14484
   THOMAS G. MUNSELL, #17037
8330 Ward Parkway, Suite 300
Kansas City, Missouri 64114
Telephone:   (816) 382-1382
Fax:            (816) 382-1383
Email:         gwillnauer@mwklaw.com
                  tmunsell@mwklaw.com

ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASSES

Dated: September 1, 2017.