IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GLYNIS DEWITT, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**NAVIENT CORPORATION, et al.,**<br><br>**Defendants.** | Case No. 2:17-CV-02509-HLT |

## **MEMORANDUM AND ORDER**

Plaintiff Glynis DeWitt moves to certify a class. Doc. 56. Plaintiff alleges that Defendants, entities involved in processing and collecting federal student loans, engaged in misconduct in connection with her loans. She seeks to represent several classes, both nationwide and Kansas residents, comprised of other student loan borrowers with similar complaints. Because Plaintiff fails to demonstrate that questions of law or fact common to all proposed class members predominate over questions affecting its individual members, the Court denies Plaintiff's motion.

### I.   BACKGROUND

#### A.  Plaintiff's Allegations

According to her complaint, Plaintiff borrowed $16,556.93 in 2001 in order to attend nursing school at the Johnson County Community College School of Nursing. The funds came in the form of two loans, disbursed by the United States Department of Education and assigned to Sallie Mae, Inc., for servicing. The loan agreements identified Navient Federal Loan Trust as the lender. After several years of periodic payments, Plaintiff owed approximately $3,600 on one loan and $2,700 on the other as of June 20, 2013. On that date, Plaintiff set up an "Auto Debit" payment

method, whereby monthly payments were to be automatically made on the nineteenth of every month.

In July 2013, Plaintiff decided to consolidate her student loan debt through a commercial lender, Commerce Bank. On July 19, 2013, Commerce Bank issued two pay-off checks to Sallie Mae to fully pay off the nursing school loans.[1] The checks were cashed on July 24, 2013, and no further auto debits were made from Plaintiff's bank account.

Nevertheless, sometime thereafter, Plaintiff learned that her loans had been placed into default status, and sold to Defendant United Student Aid Funds, Inc. ("USA Funds") on October 30, 2015. In correspondence from Defendant Navient Solutions, Inc. ("Navient Solutions"), dated November 17, 2016, Plaintiff was notified that her loans had been declared delinquent as of September 19, 2014. On January 31, 2016, USA Funds notified the National Consumer Reporting Agencies that Plaintiff's loans were in default. In February, August, and September 2016, Plaintiff sent written notifications to Navient Solutions and USA Funds explaining that she disputed the debts because they had been paid in full in 2013. Despite her requests, she received no documents verifying the debt from these defendants.

In August 2016, Navient Solutions wrote to Plaintiff, explaining that it had researched her claims. Navient Solutions had discovered that Plaintiff's pay-off checks had been cashed by Navient Department of Education; however, the loans, as of the date of the letter, had already been sold to USA Funds, described as "a private company [which] is not affiliated with Navient Department of Education." Doc. 1 ¶ 60.

---

[1] On the same day, Commerce Bank issued another six payments to Sallie Mae to pay off all of Plaintiff's other student loans.

2

As of October 25, 2016, Plaintiff's account had been placed with Defendant EOS CCA Debt Collection Co. ("EOS"), which sent her a "First Demand Notice." Plaintiff responded with notice to EOS that the debt had been paid in full. The alleged debt was then reported to the IRS. so that Plaintiff's tax refunds could be garnished, with no notice provided to Plaintiff. As a result of these threats, Plaintiff felt she had no choice but to start making installment payments on the paid-off loans.

In November 2016, Plaintiff heard again from Navient Solutions, which wrote to reiterate that Plaintiff's pay-off checks had been cashed by Navient Department of Education, and that it appeared the funds were used to pay an "8/26/09 Parent PLUS loan for [Plaintiff's daughter] Chelsea R. Harvey." *Id.* at ¶ 63. Plaintiff, with another cashier's check from Commerce Bank issued the same day as the others, had also intended to pay off her daughter's loan. The check issued for that purpose was identified accordingly on its face and was also immediately cashed. The auto debit that Plaintiff had set up for the Parents PLUS loan also stopped at this time.

By April 2017, Plaintiff had obtained counsel and sent Navient Solutions documentation to demonstrate the pay-off of her loans. Navient Solutions responded but failed to provide an explanation or documentation supporting its position. A second letter to Navient Solutions elicited a response, this time stating that Navient Solutions never received the cashier's checks for Plaintiff's student loans, and that the checks had instead been cashed by the U.S. Treasury. No further explanation has been provided by Defendants. Plaintiff continues to make payments under protest in order to avoid garnishment and a negative credit rating.

### B. Class Allegations

Plaintiff now seeks to bring an action on her own behalf and on behalf of those similarly situated under Fed. R. Civ. P. 23(a) and 23(b)(3). She seeks certification for three nationwide

3

classes, each with a duplicate Kansas-based subclass, for student loan borrowers who have suffered damages as a result of Defendants' improper, wrongful, unfair, or deceptive debt collection practices. The three classes comprise: (1) the Misallocated Payments Class; (2) the Improper Verification Class; and (3) the Loan Rehabilitation Class. Doc. 56. In her complaint, Plaintiff identifies several common questions of law and fact that she contends are shared by the classes. These include: whether Defendants have a policy and practice of collecting on settled debts; whether they use unfair practices, including garnishment and false reporting, in those efforts; whether or not they have violated federal and Kansas statutes; whether the proposed class members have paid their loans in full; and whether the proposed class members have been damaged by Defendants' unlawful conduct. To support her request for class certification, Plaintiff asserts that the Navient entities service education loans for approximately 12 million borrowers. Further, she includes internet links to the United States Consumer Financial Protection Bureau's Consumer Complaint Database, where anonymous borrowers have lodged over 5,000 complaints against Defendants, covering topics similar to those Plaintiff complains of, such as "Received bad information about my loan," "Need information about your loan balance or loan terms," and "Disclosure verification of debt." *Id.* at 6.

Plaintiff's complaint consists of nine counts; eight of these are brought individually and on behalf of the nationwide class, including: Count I against Navient Corporation and Navient Solutions for multiple violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e and § 1692g; Count II against USA Funds for multiple violations of the FDCPA; Count III against EOS for multiple violations of the FDCPA; Count IV against all Defendants for violations of Kansas's Uniform Commercial Credit Code, K.S.A. § 16a-1-201; Count V against all Defendants for violation of Kansas's Consumer Protection Act, K.S.A. §§ 50-623-627;

Count VI against all Defendants for negligence; Count VII against all Defendants for breach of contract; and Count VIII against all Defendants for unjust enrichment. Count IX is brought on behalf of Plaintiff individually against all Defendants for defamation, in connection with their reporting of her default to credit reporting agencies and the IRS. Plaintiff seeks, for herself and the class, monetary damages as well as a declaratory judgment that Defendants violated the law and an order directing them to cease and desist wrongful collections efforts, and to notify the credit reporting agencies and the IRS of their past errors. It is not clear from Plaintiff's motion to certify the class whether she intends to pursue injunctive relief.

For purposes of analyzing Plaintiff's motion for class certification, the Court must accept Plaintiff's version of events as true. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). Nonetheless, it is illustrative to review a summary of Defendants' version of events in order to develop a picture of how an adjudication of claims brought by Plaintiff and the proposed class would proceed. According to Defendants, Plaintiff's cashier's checks were sent to the wrong place—a post office box that processed payments for loans owned by the U.S. Department of Education. Consequently, the Department of Education issued a refund to Plaintiff, along with instructions as to where the payments should be sent. Someone from the Department also called Plaintiff to explain the situation. But, after Plaintiff received the refund, she proceeded to make only a partial payment on the loans, retaining approximately $4,000 of the refunded amount. The partial payment satisfied her monthly payment obligations until September 2014, at which point additional payments became due. As no further payments were made, and the auto-debiting had previously been cancelled by Plaintiff, the loans became delinquent and were purchased by the guarantor, USA Funds. EOS was engaged to collect the debt. According to Defendants, Plaintiff ignored "the various mailings, emails and telephone calls informing her of

the delinquency and subsequent default, and she made no attempt to bring the loans current." Doc. 60 at 3.

## II. STANDARD

A class may be certified if it meets the requirements of Fed. R. Civ. P. 23. Subsection (a) of the Rule sets forth four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(1)-(4). If the prerequisites are satisfied, a claimant must select one of three types of class actions listed in subsection (b) and fulfill those requirements as well. In the present case, Plaintiff seeks to certify a class in conformance with subsection (b)(3), which states that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at 23(b)(3).

The party seeking class certification has the burden of proving that the requirements of the Rule are met. *Stricklin*, 594 F.3d at 1194; *Midland Pizza, LLC v. Sw. Bell Tel. Co.*, 277 F.R.D. 637, 639 (D. Kan. 2011). The Rule does not establish "a mere pleading standard"; instead, a party must prove that the prerequisites are met. *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011). Moreover, the evidentiary proffer must be subjected to a "rigorous analysis" by the court. *Id.* at 350-51. In reviewing the complaint, the court must "accept the substantive allegations of the complaint as true." *Stricklin*, 594 F.3d at 1194. But the Supreme Court has observed that "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification

question." *Wal-Mart Stores*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citing *Wal-Mart Stores*, 564 U.S. at 351) (internal quotations omitted).

The analysis of the Rule 23(b) factors must be similarly rigorous; "[i]f anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.* at 34. The moving party must demonstrate "through evidentiary proof" that the provisions of Rule 23(b) are satisfied. *Id.* at 33. The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In analyzing the predominance requirement, the Supreme Court recently wrote:

> This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50 (5th ed. 2012)).

**III.   ANALYSIS**

The Court holds that Plaintiff has not demonstrated that questions of law or fact common to all proposed class members predominate over questions affecting its individual members. Because failure to satisfy this prong of Fed. R. Civ. P. 23(b)(3) is fatal to Plaintiff's motion to certify the class, the Court proceeds directly to this analysis, rather than undertaking the threshold inquiry as to the classes' numerosity, commonality and typicality, and the class representative's adequacy. FED. R. CIV. P. 23(a); *see also Monreal v. Potter*, 367 F.3d 1224, 1235-36 n.10

(10th Cir. 2004) (concluding that Rule 23(b)(3) requirements are not fulfilled, even after assuming that prerequisites of subsection (a) are satisfied).[2]

The factual allegations surrounding Plaintiff's own experiences with Defendants are illustrative of the individual inquiry that would be necessary in order to resolve the parties' dispute. In short, Plaintiff claims she paid off her loans in full but continues to be harassed by Defendants, who wrongfully seek additional payments and refuse to provide her with any verification to support their demands. On their side, Defendants claim that Plaintiff sent her pay-off checks to the wrong place, then pocketed the refund they issued to her and ignored their communications concerning the status of the loans. To get to the bottom of this, a fact-finder would have to ascertain where Plaintiff sent the pay-off checks, whether or not she received a refund, what she did with the putative refund, and what is the accurate and current status of her loans' balances.

In an effort to prove the suitability of her proposed classes, Plaintiff provides internet hyperlinks to the Consumer Financial Protection Bureau's database, specifically the complaints involving Navient Solutions.[3] To rigorously evaluate Plaintiff's proof, the Court clicked on the hyperlink and reviewed the first topic: "Issue—Dealing with my lender or servicer." Here, verbatim (and without corrections but removing personal identifying information), are the texts of the first three complaints that appear.

> **1.    Consumer Complaint Narrative.**
> This complaint is further evidence that Navient : 1. created obstacles to repayment by providing bad information ( account number change without notification 2. processed payments incorrectly and deceptively NOT on our account 3. failed to act when we, the

---

[2] Although the Court rests its decision on Plaintiff's failure to satisfy the predominance requirement of Fed. R. Civ. P. 23(b)(3), this analysis is not intended to imply that Plaintiff has sufficiently proven the Rule 23(a) factors. In fact, Plaintiff has similar and related problems with every requirement of the Rule, including the adequacy of the class counsel, resulting from her familial relationship with the attorney who filed the complaint.

[3] Plaintiff states that additional evidentiary support for class certification will have to be obtained from Defendants, using the Court's subpoena powers.

8

borrower, complained Our daughter had a student loan with Navient. The original loan was with XXXX XXXX , then XXXX , who turned it over to Navient in XXXX . We, the parents, were paying the loan dutifully every month. There were no problems until XXXX of XXXX , when Navient notified us of no payment for XXXX , due XXXX XXXX . We researched and found a payment made and cashed by Navient on XXXX / XXXX / XXXX . We called them, and they said that they had no record of this payment. We were instructed to FAX them the proof from our bank, the XXXX XXXX XXXX , so we did on XXXX XXXX , XXXX . Then on XXXX XXXX , XXXX, we discovered the same phenomenon for the XXXX / XXXX / XXXX payment, and we were assessed a late fee. We called again. Same story from Navient - no record of any payments since XXXX . We asked if they had received our XXXX XXXX FAX, and they had but when the agent viewed it, she said that it was unreadable. First I knew of that. So, I resent. By this time, we were very angry as no agent was displaying any helpful attitude. Then I discovered something : the loan number in Bill Pay at my bank and the loan number on Navient's paperwork were different. Navient's began with a XXXX , and Bill Pay began with a XXXX . I explained to the agent, and she said that they never had loan numbers beginning with a XXXX. At this point, I called my bank, XXXX, to ask them for help. By this time, I had spend six (6) hours in phone calls ( mostly on hold ) with Navient, spoke with managers there and was basically stonewalled by them. They had my money and were asking for more. The agent at XXXX arranged for three conference calls, each one for nearly 1 hour to coerce Navient into agreeing that they had the money. Thanks to the XXXX XXXX XXXX, they could track details and confirmation numbers of receipt. Also, when we tracked back on the loan number, Navient's old paperwork to us changed the loan number in XXXX XXXX but without specific notice as such at that time. So, in Bill Pay for us to Navient, we were always sending to the old loan number beginning with a XXXX and Navient was successfully receiving and debiting our account up until XXXX XXXX. We have now hopefully paid off the loan successfully in total - we only had one more month on the loan. We would never recommend using Navient for anything. We are glad to be rid of this horrible company!

2. **Consumer complaint narrative.**
Hello, I have been a Federal Government employee for the last 7 years and after paying towards my student loans during this entire time, I recently found out I was not eligible for the Public Service Loan Forgiveness Program because not all of my loans were Direct loans ( many are Federal Family Education Loan Program loans ). I was told years ago that as long as I was paying towards my loans,

9

>they would be forgiven after 10 years. I submitted the certification paperwork this year but have not received a response from the Department of Education despite submitting this information months ago.
>
>**3.    Consumer complaint narrative.**
>After being guilted and begged, I reluctantly co-signed a student loan for a friend through XXXX XXXX . We had a falling out a few years later and she cut off communication and moved out of state. Some time not to long after, XXXX XXXX contacted me about the loan being behind. I brought the loan current and was told that if I made on time payments for two years that I could be released from the loan. I made my payments but shortly before the two years was up, the loan was transferred to Navient. At the end of the two years, I contacted Navient and was told they have no such policy and refused to honor my agreement with XXXX XXXX . Six years later, I am still making payments with no end in sight and Navient still refuses to help me by going after XXXX XXXX , the primary loan holder. Navient could care less who pays the loan as long as they get their money. Navient should honor what XXXX XXXX told me and release me from my obligation. I understand the commitment that I made co-signing but the intent was to help out here or there with a payment, not have the entire loan dumped on me. As far as I see it, this was a criminal/fraudulent act by XXXX and should be treated as such.

Although these three accounts—four counting Plaintiff's—demonstrate the hassle and stress involved with dealing with Navient Solutions, it is also obvious that the resolution of each episode hinges on an individualized determination of very disparate facts. That is, in the words of the Supreme Court, "members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods*, 136 S. Ct. at 1045. In the first scenario, the problem was finally solved when the discrepancy in the loan account number was discovered. The second scenario will require an investigation about whether the writer, a federal employee, is eligible for a public service loan forgiveness program. In the third scenario, an unfortunate person got duped by a friend who absconded, leaving the writer holding the bag for the loan's repayment. With over 5,000 complaints logged on the database, there are no doubt some common issues. But the Court

will not sift through the hyperlinks to find them. The Court determines that Plaintiff has failed to fulfill her burden of proving that questions of law or fact common to all proposed class members will predominate over questions affecting its individual members. Consequently, the Court denies Plaintiff's motion to certify the class.

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff Glynis DeWitt's Motion to Certify Class (Doc. 56) is DENIED.

IT IS SO ORDERED.

Dated: March 10, 2020                /s/ *Holly L. Teeter*
                                                      HOLLY L. TEETER
                                                      UNITED STATES DISTRICT JUDGE